### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GMACH SHEFA CHAIM,** | **Civil Action No. 09-5426 (MF)** |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES OF AMERICA,** | **OPINION** |
| **Defendant.** | |

<u>**FALK, U.S.M.J.**</u>

## I.     INTRODUCTION

The Gmach Shefa Chaim ("the Gmach") commenced this civil equitable proceeding by filing a motion pursuant to 18 U.S.C. § 983 and/or Federal Rule of Criminal Procedure 41(g) for the return of $508,985.21 seized from an account at Valley National Bank in Union City, New Jersey, pursuant to a criminal search warrant.  While this action was pending, the United States of America (the "Government") obtained a criminal indictment against a real estate developer from Hudson County named Moshe Altman ("Altman") that contained a forfeiture allegation against the Gmach's seized funds.  As a result of the indictment, there are two active proceedings pending in this District that involve the seized property, one criminal and one civil.  The Gmach wishes to continue with this civil action, as it is not a party to the criminal case.  The Government claims that the civil action is moot and that all issues relating to the property should be resolved in the pending criminal case.  This Court must determine whether a subsequent criminal indictment containing a forfeiture allegation renders moot a

first-filed civil action challenging the seizure.  This precise question appears to be one of first impression in this Circuit.

In order to address the issue, it is appropriate to briefly review the law relating to Rule 41(g) motions and determine the proper standard to apply under these circumstances, a subject of some disagreement between the parties.

For the reasons set forth below, this Court concludes that the proper standard involves the consideration of multiple equitable factors.  Applying those factors in this case, the Court finds that the pending criminal case provides the Gmach with an adequate remedy at law to pursue a return of the seized funds.  Therefore, the Court will decline continuing equitable jurisdiction over this case and dismiss the Gmach's motion.

## II.   BACKGROUND

### A.   Factual Allegations

This case arises out of seizure of funds made in connection with a large-scale money laundering and corruption sweep by the Government in the summer of 2009, which resulted in criminal charges against 44 individuals, including three New Jersey mayors, two state assemblymen and five rabbis.

The Gmach is a not-for-profit Hasidic free loan society run by its President, Moshe Shwartz, and its Vice President, Aaron Askal.  (Pl.'s Opening Br. 1; CM/ECF No. 1.)  The Government alleges that the Gmach's bank accounts were used by an individual arrested in connection with the sweep, Moshe Altman, to facilitate a money laundering scheme that laundered more than $668,000 over the course of more than two years.  (Gvt.'s Opp. at 1; CM/ECF No. 4.)  Based on information recovered during a search of Altman's offices, the

Government alleges that out of the $668,000 Altman allegedly laundered, $357,500 was "laundered through Gmach bank accounts." (Id.)  Although Altman has no formal connection with the Gmach, the Government contends that Altman was recorded by a cooperating witness, Solomon Dwek, stating that he had "washing machines" through which he could launder funds known to be "ill-gotten gains." (Id. at 2.)  The supposed "washing machines" are alleged to be the Gmach's accounts.  Moreover, as part of the scheme, the Government alleges that Dwek wrote "sizeable checks" to the Gmach, which were returned to him less a 15% fee. (Id.)

The Government states that Altman used three Gmach bank accounts in connection with the scheme.  The seized funds at issue here were taken from one of the three accounts -- i.e., account number 54169097 at Valley National Bank in Union City, New Jersey ("the seized account").  The Gmach is the sole account holder for the seized account; the only authorized signatures for the account are those of the Gmach's President and Vice President.  (Pl.'s Opening Br. 2-3; Affidavit of Madeline Selwyn in Support of Plaintiff's Motion for the Return of Property ¶ 2; CM/ECF Nos. 1, 1-1.)  The Gmach argues that none of the supposed money laundering checks written by Dwek were deposited into the seized account.  (Pl.'s Reply Br. 4-5, Declaration of David G. Liston, Esq., in Support of Plaintiff's Mot. for Return of Property ¶¶ 6-7; CM/ECF Nos. 8-9.)  However, the Government counters that more than $1.5 million passed through the three accounts combined, and that money laundering checks were deposited into the Gmach's other two "operating" accounts which were then filtered into the Gmach's seized account.  (Letter from Bradley A. Harsch, Esq., dated January 29, 2010, at 3; CM/ECF No. 12.)  According to the Government, the commingling of tainted funds within the three accounts makes

the seizure lawful and the funds subject to criminal forfeiture.  (Id.)  The Gmach disagrees and seeks an immediate return of its funds.

### B.    Procedural History

On October 23, 2009, the Gmach filed its motion for return of property pursuant to 18 U.S.C. § 983 and/or Federal Rule of Criminal Procedure 41(g).  See CM/ECF No. 1.

On November 30, 2009, the Government opposed the motion.  See CM/ECF No. 4.  The Government's primary opposition was that it planned to file a criminal forfeiture action within 90 days, which it claimed would "moot" the Gmach's motion.  On January 25, 2010, the Gmach filed a reply brief, challenging the merits of the Government's initial seizure, disputing the propriety of the amount seized, and arguing that the filing of a criminal forfeiture action would not moot the current proceedings.  See CM/ECF No. 8.

On January 28, 2010, an indictment was returned against Moshe Altman.  See CM/ECF No. 12.  In the indictment, the Government brought a criminal forfeiture allegation against the funds seized from the Gmach's account.  The Gmach was not indicted and has not been accused of any criminal wrongdoing.

On February 5, 2010, the parties consented to the jurisdiction of the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c).  See CM/ECF No. 15.

On February 19, 2010, the Court held oral argument.

## II.   DISCUSSION

The Gmach's motion presents two alternative avenues through which it argues that it is entitled to a return of its seized funds -- i.e., 18 U.S.C. § 983, and Federal Rule of Criminal Procedure 41(g).  As this matter has proceeded, the parties have focused their arguments on the

Gmach's request for relief under Rule 41(g), and further, to whether this independent equitable proceeding is the proper forum to resolve the dispute. However, before considering the Gmach's request under Rule 41(g), it is appropriate to briefly address the Gmach's statutory argument advanced pursuant to 18 U.S.C. § 983.

A.   **The Gmach's Claim under 18 U.S.C. § 983**

18 U.S.C. § 983 is part of the Civil Asset Forfeiture Reform Act ("CAFRA") of 2000. It provides, in part:

> **(1)(A)(i)** Except as provided in clauses (ii) through (v), **_in any nonjudicial civil forfeiture_** proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure.
> .       .       .
>
> **(F)** **_If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time_**. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.

Id. (emphases added).

On October 23, 2009, the date the motion was filed, the Gmach alleged that its funds had been seized and held for more than 60 days without the Government commencing a forfeiture action. They alleged this conduct violated 18 U.S.C. § 983(1)(A)(i), and that the Government was required, under subsection (F) above, to return the property.

In opposition, the Government explained that the above statute only applies to "nonjudicial civil forfeitures," and not to seizures made pursuant to a criminal search warrant, as was the seizure in this case. Thus, the Government argued that the statute is inapplicable and the

Gmach's reliance on it should be rejected.  In its reply brief, the Gmach appears to concede this point.  The Government's position is correct.

"Non-judicial civil forfeitures" are governed by statute and cannot exceed $500,000.  See 19 U.S.C. § 1607(a)(1).  Here, the funds seized are in excess of that amount.  Thus, the Government is not permitted to commence a non-judicial civil forfeiture of the Gmach's funds.  See id.  The scant case law on the subject, none of which is cited by the parties, is uniform in holding that the statute the Gmach attempts to rely upon is limited to nonjudicial civil forfeitures and does not apply to seizures made pursuant to a search warrant.  As the Ninth Circuit Court of Appeals has explained:

> The district court properly granted the Government's motion for summary judgment.  By its terms, 18 U.S.C. 983 applies only to 'property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute.'  18 U.S.C. 983(a)(2)(A). . . .

Celata v. United States, 334 Fed. Appx. 801, 802 (9th Cir. 2009).

Other cases confirm that the statutes relied upon do not apply to the seizure in this case.  See, e.g., Langbord v. United States Dep't of Treasury, 645 F. Supp. 2d 381, 389 (E.D. Pa. 2009) ("CAFRA clearly indicates that the provisions of § 983(a) only apply in any nonjudicial civil forefeiture proceeding under a civil forfeiture statute." (quotation omitted)); DWB Holding Co. v. United States, 593 F. Supp. 2d 1271, 1272 (M.D. Fla. 2009) ("Although Plaintiff is correct that written notice is required within sixty (60) days after the date of seizure when there is a nonjudicial civil proceeding, Plaintiff is incorrect that such notice is required in this instance because the United States has not commenced nonjudicial forfeiture proceedings.").  Therefore, the Gmach's reliance on the statute is improper, and its request for the return of its funds pursuant to 18 U.S.C. § 983 is **denied**.

6

### B.     The Gmach's Rule 41(g) Motion[1]

There is no authority from the Third Circuit addressing a motion for the return of property pursuant to Federal Rule of Criminal Procedure 41(g) when the motion was followed by the return of an indictment against a third-party containing a forfeiture allegation.

When the motion was first filed and there were no pending criminal proceedings against either the Gmach or the property, the question presented was how long the Government could continue to hold the Gmach's property without commencing either an action against the Gmach or an action against the property.  For that question, there is appears to be a standard, which was set forth by the Third Circuit in <u>United States v. Premises Known as 608 Taylor Avenue</u>, 584 F.2d 1298, 1302 (3d Cir. 1978) ("<u>608 Taylor Ave.</u>").  That standard considers whether the Government's continued retention of the property is reasonable under all the circumstances.  <u>See id.</u>  At oral argument, the Gmach confirmed that it believes the "reasonableness" standard should apply to the motion despite the indictment seeking forfeiture of the property.[2]

The continued assertion of the "reasonableness" standard is inappropriate.  When the Altman indictment seeking forfeiture was returned, the considerations changed.  Given the pendency of a criminal proceeding containing a forfeiture allegation, the issue is whether this Court should exercise its equitable jurisdiction over the Gmach's motion.  As explained below, the <u>608 Taylor Ave.</u> standard does not resolve this question.  Rather, most courts apply a different test to determine the applicability of exercising equitable jurisdiction.

---

[1] Rule 41(g) was formerly Rule 41(e).  The rules were re-designated in 2002 without substantive change.

[2] <u>See</u> Transcript of Oral Argument dated February 19, 2010 ("Tr.") at 9:3-18.

7

1.   **Why the *608 Taylor Ave.* Reasonableness Standard Does Not Apply**

Relying on 608 Taylor Ave., some district courts in this Circuit have considered Rule 41(g) motions under a standard of "reasonableness under all of the circumstances." In re Search Warrant, No. 03-0008, 2003 WL 22095662, at *5 (D. Del. Sept. 9, 2003); see also United States v. Lamplugh, 956 F. Supp. 1204, 1207 (M.D. Pa. 1997). This standard weighs "the interests of the government in holding the property against the owner's rights to use the property." 608 Taylor Ave., 584 F.2d at 1302. Factors to be considered include whether the property is needed as evidence or for an investigation, and the timeliness of government action. 608 Taylor Ave., 584 F.2d at 1304. This standard does not require the movant to show: (1) that it does not have another adequate remedy at law; and (2) that it will suffer irreparable harm if return of the property is not granted. See, e.g., Lamplugh, 956 F. Supp. at 1207.

In 608 Taylor Ave., the Third Circuit considered a motion for a pre-indictment return of property brought by an innocent third-party.[3] There, the petitioner had approximately $11,975 in United States currency seized from his residence; the seizure was made pursuant to a search warrant and related to an ongoing gambling investigation. Id. at 1299. Two months after the seizure, the petitioner filed a motion for the return of property. Id. Critically, no criminal proceedings against the petitioner or property had been commenced, and there was no allegation that the property was subject to forfeiture. Id. The district court proceedings lasted five months.

---

[3] The motion was not brought under Rule 41(g) or its predecessor, Rule 41(e). Rather, the motion was brought as an independent cause of action for return of property based on the general equitable jurisdiction of the federal courts. See 608 Taylor Ave., 584 F.2d at 1301 n.4. In Gov't of the V.I. v. Edwards, 903 F.2d 267, 273 (3d Cir. 1990), the Third Circuit applied the "reasonableness" language of 608 Taylor Ave. to a post conviction request for seized property made pursuant to Rule 41(e), which it found complied with the Advisory Committee Notes to Rule 41(e). See id. at 274. In Edwards, unlike here, however, the property had been seized and held by the Government through the completion of a criminal trial without the filing of a forfeiture allegation. Id. at 273-74.

Id. at 1300.  The district court concluded that the Government's continued holding the innocent non-party's currency for that long without commencing any sort of proceeding against the person or the property was "reasonable" because the currency was related to an ongoing investigation. See id.

On appeal, the court framed the question presented as how long the Government could hold an individual's property prior to commencing some type of proceeding without violating that individual's due process rights.  See generally id. at 1301-02.  Addressing that issue, the Third Circuit adopted a "reasonableness" standard that weighed the Government's interest in retaining the property to use as evidence against the owner's right to the property.  See id. at 1302.  However, with respect to property that may become subject to *forfeiture*, the Court held that "retention might be permitted even if no evidentiary justification is found."  Id. at 1304.  In the event forfeiture was sought, "the district court should insist on the prompt institution of the appropriate proceedings."  Id. at 1304.

608 Taylor Ave. focused on how long the Government may reasonably hold an innocent party's property before commencing some type of action relating to that property.  Here, the Gmach's funds are now the subject of a forfeiture allegation in a pending criminal case.  The "reasonableness" standard does not control whether or not this Court should exercise equitable jurisdiction.  Rather, the reasonableness standard would only apply in the event the Court retains jurisdiction and proceeds to resolve the motion on its merits.  See, e.g., Ramsden v. United States, 2 F.3d 322, 326-27 (9th Cir. 1993); In re Singh, 892 F. Supp. 1, 4 (D.D.C. 1995).[4]  Thus,

---

[4] The district courts that have adopted the 608 Taylor Ave. standard are cases in different procedural postures.  All involved motions where no forfeiture allegation had been made against the property.  See, e.g., In re Search of the Scranton Housing Auth., 436 F. Supp. 2d 714, 725 (M.D. Pa. 2006) (property seized in connection with pending grand jury investigation; no indictment and no forfeiture allegation against the property), reversed on other grounds by, 487

9

the Court declines the Gmach's invitation to apply 608 Taylor Ave.'s "reasonableness" standard to determine whether the exercise of equitable jurisdiction is appropriate in this case.

### 2.   **Proper Standard For Deciding This Motion**

A person aggrieved by the deprivation of property is permitted to file a motion under Federal Rule of Criminal Procedure 41(g) to request its return.  See United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999).[5]  However, "when the motion is filed by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction."  United States v. Comprehensive Drug Testing, Inc., 579 F.3d 989, 1001 (9th Cir. 2009) (en banc).  Such a motion is generally considered an equitable complaint, and the district court "must exercise 'caution and restraint'" before exercising equitable jurisdiction over its merits.  Ramsden, 2 F.3d at 324 (quoting Kitty's East v. United States, 905 F.2d 1367, 1370 (10th Cir. 1990)).

In considering whether to exercise equitable jurisdiction, courts, including some district courts within this Circuit, generally consider the following factors:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant;
> (2) whether the movant has an individual interest in and need for the property he wants returned;

---

F. Supp. 2d 530 (M.D. Pa. 2007); In re Search Warrant, 2003 WL 22095662, at *1, *3 (D. Del. Sept. 9, 2003) (same); Lamplugh, 956 F. Supp. at 1207-08 (post-indictment motion relating to property seized at the time of arrest that was not evidence and not subject to forfeiture allegation).

[5] Rule 41(g) provides: A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

(3) whether the movant would be irreparably injured by denying return of the property; and

(4) whether the movant has an adequate remedy at law for the redress of his grievance.

Ramsden, 2 F.3d at 325 (citing Richey v. Smith, 515 F.2d 1239, 1243-44 (5th Cir. 1975)); see also e.g., Black Hills Inst. of Geological Research v. U.S. Dep't of Justice, 967 F.2d 1237, 1239 (8th Cir. 1992); Floyd v. United States, 860 F.2d 999, 1003 (10th Cir. 1988); Mr. Lucky Messenger Serv., Inc. v. United States, 587 F.2d 15, 16-17 (7th Cir. 1978); Account Servs. Corp. v. United States, No. 09-1495, 2009 WL 2755649, at *2 (S.D. Cal. Aug. 27, 2009) (applying above factors to determine propriety of equitable jurisdiction over Rule 41(g) motion that was allegedly rendered moot by forfeiture allegation in later-filed indictment); Manno v. Christie, No. 08-3254, 2008 WL 4058016, at *2 (D.N.J. Aug. 22, 2008) (acknowledging above factors but not applying for other reasons); Johnson v. United States, 971 F. Supp. 862, 866 (D.N.J. 1997); In re Singh, 892 F. Supp. 1, 4 (D.D.C. 1995); Tyagi v. DiStazu, 809 F. Supp. 10, 12-13 (M.D. Pa. 1992).

Of the four factors, "the considerations which are paramount are: (1) whether the claimant has an adequate remedy at law; and (2) whether the claimant can show irreparable harm." Tyagi, 809 F. Supp. at 13 (citing Floyd v. United States, 860 F.2d 999, 1003 (10th Cir. 1988)). "Whether to exercise [general equitable jurisdiction] in a given case is subject to the sound discretion of the district court." Indus. Cardoen, Ltda v. United States, 983 F.2d 49, 51 (5th Cir. 1993) (quoting Richey, 515 F.2d at 1243); Cf. Chambers, 192 F.3d at 376 ("We review a district court's decision to exercise its equitable jurisdiction for an abuse of discretion." (citing Ramsden, 2 F.3d at 324)). Ultimately, "the decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint. Such jurisdiction, therefore, is

only appropriate in exceptional cases where equity demands intervention."   United States v. Dean, 80 F.3d 1535, 1542 (11th Cir. 1996).

### C.   The Consequences of the Subsequent Forfeiture Indictment on the Rule 41(g) Motion

The parties' briefing and argument focused almost exclusively on whether this proceeding is "moot" because the Gmach now has another "adequate remedy at law" to pursue its claim.  The Government argues that Rule 41(g) motions are only proper when the petitioner has no other means through which it may seek the return of its property.  It contends that the filing of the criminal indictment against Mr. Altman containing the forfeiture allegation moots the pending Rule 41(g) motion.  According to the Government, once an indictment is filed, the proper venue to seek the return of seized property is an ancillary criminal proceeding pursuant to 21 U.S.C. § 853(n)(2).

The Gmach counters that this civil action should proceed because the criminal case does not provide an "adequate remedy at law."  First, the Gmach argues that it will not be permitted to challenge the forfeitability of the property in an ancillary criminal proceeding, only ownership rights.  The Gmach contends that the property should not be forfeited in the first place, and relegating it to the criminal process deprives it of the chance to make that argument.  Second, the Gmach contends that it cannot begin to seek to obtain its property in the criminal case until Altman's criminal matter is resolved and an initial forfeiture order is entered, which it claims could take months or years.  The Court now considers these arguments in light of applicable law.

### 1.   Statutory Criminal Forfeiture

If a defendant, like Altman here, is charged with a money laundering offense in violation of 18 U.S.C. § 1956(a), the Government may seek forfeiture of "any property, real or personal,

involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).

Once such a forfeiture allegation is alleged in an indictment, third parties are barred by statute

from commencing a separate proceeding regarding ownership of the seized property.  21 U.S.C.

§ 853(k) provides:

> **(k) Bar on intervention**
> Except as provided in subsection (n) of this section, **no party
> claiming an interest in property subject to forfeiture under this
> section may**—
> **(1)** intervene in a trial or appeal of a criminal case involving the
> forfeiture of such property under this section; or
> **(2) commence an action at law** or equity against the United States
> concerning the validity of his alleged interest in the property
> **subsequent to the filing of an indictment or information
> alleging that the property is subject to forfeiture under this
> section.**

Id. (emphases added).

If the defendant is convicted, the Court may enter an order forfeiting such property.  See

18 U.S.C § 982(a)(1); see also Fed. R. Crim. P. 32.2(b)(1).  Thereafter, notice of forfeiture must

be published and any third party claiming an interest in the property may contest the forfeiture in

an ancillary criminal proceeding as follows:

> **(2)** Any person, other than the defendant, asserting a legal interest
> in property which has been ordered forfeited to the United States
> pursuant to this section may, within thirty days of the final
> publication of notice or his receipt of notice under paragraph (1),
> whichever is earlier, petition the court for a hearing to adjudicate
> the validity of his alleged interest in the property. The hearing shall
> be held before the court alone, without a jury.

21 U.S.C. § 853(n)(2).

Upon the filing of a third-party petition, the forfeiting court conducts a hearing regarding

the forfeiture.  21 U.S.C. § 853(n)(4)-(6).  The petitioning third party is essentially requesting

that the court amend its initial order of forfeiture to recognize its superior right to the property at issue.  See generally 21 U.S.C. § 853(n)(6)(A).  It is not generally a proceeding to determine whether the property should have been forfeited in the first place.  In the event the third party can establish "a legal right, title, or interest" in the property superior to the defendant, the order of forfeiture is amended and the property returned to the third-party.  See id.  Ownership by the innocent third party is all that must be shown.  This is because the purpose of criminal forfeiture statutes is to punish the *criminal defendant* for criminal conduct.  See, e.g., Libretti v. United States, 516 U.S. 29, 41 (1995).  If the third party petitioner has a superior right to the property, it is *that* party that is being punished by the forfeiture, not the defendant.

### 2.     **Is the Gmach's 41(g) Motion Moot?**

The Government contends that because of the forfeiture allegation, the Gmach is limited to pursuing a return of those funds through Section 853(n) above.  It also argues that the bar on "commenc[ing] an action at law or equity against the United States" contained in Section 853(k) precludes the Gmach's Rule 41(g) motion.  This argument triggers the interplay between Rule 41(g) motions and the remedies available to a third-party pursuant to Section 853, the general rules of which are the following.

If the party that has filed the Rule 41(g) motion is itself indicted, it is clear that any attempts to recover property must then occur in that criminal proceeding.  See Dibella v. United States, 369 U.S. 121, 131-32 (1962); see also Financial Mgmt. Prof'l Corp. v. United States, No. 88-2272, 1989 WL 104946 (E.D. Pa. Sept. 6, 1989) (dismissing Rule 41(e) motion filed prior to indictment once the moving party itself was indicted).

14

It is also clear that once there is an indictment with a forfeiture allegation, an innocent third party, such as the Gmach, cannot then *commence* a Rule 41(g) proceeding.  See 21 U.S.C. § 853(k) (barring commencement of an action "*subsequent to the filing of*" an indictment or information containing a forfeiture allegation); see also United States v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005) ("Section 853(n) is the exclusive proceeding in which third parties may claim interests property subject to criminal forfeiture.  The statute specifically bars third parties from intervening in the trial or the appeal of a criminal case to assert their interests, or from bringing independent suits against the United States once an indictment alleging that the property is subject to forfeiture has been filed." (citations omitted)).

However, this case does not fit neatly into either of the above two, well-established categories.  Here, there is a *pre-existing* Rule 41(g) motion and a *later* filed indictment containing a forfeiture allegation.  The Gmach was not indicted.  Moreover, Section 853(k)'s express bar does not apply to the Gmach's motion because it was filed before the indictment was returned.[6]  In effect, by filing the motion before the indictment the Gmach has slipped into a category where the motion does not appear to be legally moot; however, the continuation of these proceedings would result in two courts in the same district addressing the same seized property.  The Court, and the parties, could locate only two cases in the federal courts that address the procedural scenario present in this case.[7]  In both cases, the courts dismissed the

---

[6] Had the Gmach filed it motion after the indictment, no matter how innocent the Gmach is as a third party, it would clearly be limited to proceeding through the criminal case.  See 21 U.S.C. § 853(k).

[7] The Government cites some dicta in a third case, United States v. Nolasco, No. 08-4664, 2009 WL 4457516 (3d Cir. Dec. 4, 2009), to support their argument that the motion is "moot."  In Nolasco, the Third Circuit stated:  "[A Section 853(n)] is the only avenue by which a third-party claimant may seek to assert an interest in property that has been included in an indictment."  Id. at *2 (quoting United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005)).  However, Nolasco

pending Rule 41(g) motions and required the third party movants to pursue their claims through the criminal proceedings.

In <u>De Almeida v. United States</u>, 459 F.3d 377 (2d Cir. 2006), the Second Circuit affirmed a district court's dismissal of two third-party Rule 41(g) motions filed prior to the filing of an indictment containing a forfeiture allegation.  There, the Government seized 39 bank accounts at Merchant's Bank in New York pursuant to a search warrant signed by then-Magistrate Judge Stanley R. Chesler in the District of New Jersey.  <u>Id.</u> at 379.  The seizures were based on the allegation that one bank employee, Maria Nolasco ("Nolasco"), used the bank accounts in connection with an illegal money laundering and money transmitting business.  <u>Id.</u> at 378-79. After Nolasco's arrest, but more than three-and-a-half months before she was indicted, two of the accounts holders, Harber Corporation and Gatex Corporation, filed motions for the return of funds pursuant to Rule 41(g).  <u>See id.</u> at 379.  Nolasco was eventually indicted in the District of New Jersey, and the Government moved the same day in New York to have the Rule 41(g) motions dismissed.  <u>Id.</u> at 380.  The district court granted the motions and dismissed all of the 41(g) motions, concluding that "the equities weighed against the exercise of jurisdiction[,]" that "the [p]etitoners can pursue relief through ancillary proceedings in New Jersey[,]" and that "exercising jurisdiction in New York would risk inconsistent resolutions."  <u>Id.</u> at 380.

On appeal, the Second Circuit affirmed the dismissal of the Rule 41(g) motions. Relevant here, the Second Circuit noted that the bar contained in 21 U.S.C. § 853(k) against a third-party commencing an action against the Government relating to the seized property did "*not* in plain terms affect the Rule 41(g) motions of Harber and Gatex, which were filed *before*

---

arose in different circumstances, and was not a case about the interaction between Rule 41(g) and Section 853(n).

Nolasco's indictment." Id. at 381 (emphases added).  However, the Second Circuit found that Rule 41(g) jurisdiction is discretionary, and is generally only available when there is no other adequate remedy at law.  Id. at 382.  The Court concluded that "[i]n light of the remedy available . . . in New Jersey, the harm asserted by them, and the serious risk of duplicative proceedings and conflicting results, we see no abuse of discretion in the district court's dismissal." Id. at 383. Still, the court cautioned that the mere availability of ancillary criminal proceedings elsewhere may not always present an "adequate remedy at law." Id.  In particular, a potential claimant may lack an adequate remedy at law if it "faces months or years of delay before the claimant may seek an ancillary proceeding in the criminal forfeiture action." Id.  This was not an issue in De Almeida because the criminal proceedings in New Jersey had already been completed.  See id.

In Account Servs. Corp. v. United States, No. 09-1495, 2009 WL 2755649 (S.D. Cal. Aug. 27, 2009), a third-party claimant filed a Rule 41(g) motion prior to an indictment containing a forfeiture allegation.  There, the movant, Account Services Corp. ("ASC"), was a third-party payment processor that processed payments for internet poker players.  See id. at *1. The Government seized approximately $14,000,000 in connection with an ongoing sealed investigation.  See id.  Approximately one month after the seizure, ASC moved for return of the funds pursuant to Rule 41(g) -- prior to an indictment or any other forfeiture proceeding.  About one month *after* the Rule 41(g) motion was filed, the Government indicted the principal of ASC and sought forfeiture of the funds, but ASC was not indicted.  Id.

The district court utilized the four factor test described in Ramsden to determine whether it should continue to exercise equitable jurisdiction over the motion.  Id. at *2.  After considering the first three factors, the court, relying on De Almedia, acknowledged that the 41(g) motion is

not technically moot because it was filed prior to the indictment.  Id. at *4.  Nevertheless, the court found that the ancillary criminal proceeding provided an adequate remedy at law.  It concluded that, given the absence of irreparable harm, a delay in the criminal proceedings would not cause the movant undue prejudice.  See id. at **3-4.  Moreover, it found that "for this court to exercise jurisdiction over the motion, which deals with similar substantive issues present in the New York criminal proceeding, would certainly duplicate judicial resources and risk contrary decisions regarding the property."  Id.   Accordingly, the court declined to exercise equitable jurisdiction and dismissed the motion.  Id.

De Almedia and Account Services stand for the general proposition that, although a Rule 41(g) motion is not technically rendered moot by a later filed indictment, so long as there is an adequate alternative remedy available, such as a criminal proceeding, a court should ordinarily decline equitable jurisdiction and dismiss a pre-existing Rule 41(g) motion.[8]

### 3.      The Altman Criminal Proceeding Presents an "Adequate Remedy at Law"

As stated earlier, the Gmach makes two arguments as to why an ancillary criminal proceeding is inadequate.  First, the Gmach argues that it will not be permitted to challenge the validity of initial forfeiture in the Altman criminal proceeding.  Second, the Gmach argues that it is an innocent party whose funds have been seized and that there will be a substantial delay if it is forced to wait until a judgment in the criminal case is entered.  Though quite understandable, the arguments are ultimately unavailing.

---

[8] Despite there being no apparent *per se* rule finding that third-party Rule 41(g) motions are rendered moot by the filing of an indictment containing a forfeiture allegation, it was conceded by counsel for the Gmach at oral argument that apparently no district court in the country has ever continued an equitable Rule 41 proceeding under these circumstances.  See Tr. at 9:19-10:5; 20:14-20:19.

18

First, it is not entirely clear that the Gmach will be precluded from challenging the basis of the criminal court's initial forfeiture of the funds, assuming it occurs.  There is authority holding that ownership is the only relevant issue in a Section 853(n) ancillary proceeding.  See Nolasco, 2009 WL 4457516, at *3 (not precedential); see also e.g., United States v. Andrews, 530 F.3d 1232, 1236-37 (10th Cir. 2008); United States v. Porchay, 533 F.3d 704, 710 (8th Cir. 2008); United States v. Lazarenko, 575 F. Supp. 2d 1139, 1148 (N.D. Cal. 2008).

However, other courts have permitted third-party claimants in Section 853(n) proceedings to re-litigate whether property was properly subject to forfeiture in the first place, concluding that a third-party should not be bound by a finding of forfeitability in case they are statutorily prohibited from participating in.  See, e.g., United States v. Reckmeyer, 836 F.2d 200, 206 (4th Cir. 1987) ("Nothing in 853(n) explicitly acknowledges the right of third parties to attack the validity of the forfeiture order by proving that a particular asset was not forfeitable under the terms of the statute.  Serious due process questions would be raised, however, if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture."); United States v. Farley, 919 F. Supp. 276, 278 (S.D. Ohio 1996) ("Section 853(n) presents a reasonable process whereby a third party may assert an interest in the property subject to forfeiture.  Confining a third party to the facts as determined by another's guilty plea when that third party is statutorily prohibited from participating in the proceeding . . . files in the face of logic as well as basic due process.").

More importantly, however, even if the Gmach is prohibited from challenging the funds' forfeitability in the ancillary proceeding, it is doubtful that there is any prejudice.  On a practical

level the legal importance of the initial forfeiture is minimal to the issue of whether the property

should be returned.  This was explained by the Tenth Circuit as follows:

> [A] third-party has no right to challenge the preliminary order's finding of forfeitability; rather, the third party is given an opportunity during the ancillary proceeding to assert any ownership interest that would require amendment of that order.  We agree with the government's explanation: **[I]f the property really belongs to the third party[,] he will prevail and recover his property whether there were defects in the criminal trial of the forfeiture process or not; and if the property does not belong to the third party, such defects in the finding of forefeitability are no concern of his**.

United States v. Andrews, 530 F.3d 1232, 1237 (10th Cir. 2008) (citation omitted) (emphasis

added).

As Andrews explained, if the Gmach can establish that it has superior interest in the

property to that of Altman, it will prevail and recover its money.  It would not matter whether the

funds were subject to an initial forfeiture order.   However, if the Gmach cannot establish

ownership, then it does not have a constitutional right to object to the forfeiture of the funds in

the first place.  See, e.g., Lazarenko, 575 F. Supp. 2d at 1148 (noting that 853(n) proceedings

establish ownership, which is the ultimate question, and that if a third party could not prevail on

that issue, "a third-party has no constitutional right to challenge a court's forfeiture order if he

has no superior [ownership] interest in the property seized.").  For these reasons, the Gmach's

first argument fails.

Turning to the Gmach's second argument, the possibility of delay does not deprive the

Gmach of an adequate remedy.  Indeed, it is not certain that there will be much of a delay at all.

On February 16, 2010, the Honorable Jose L. Linares, U.S.D.J., issued an Order in the Altman

criminal case scheduling a trial for April 5, 2010.  See United States v. Moshe Altman, CM/ECF

Docket No. 10-cr-00053 (JLL) at Entry No. 18 p. 5.[9]   Moreover, delay is sometimes an unavoidable feature of litigation, often more so in civil cases.  Its mere possibility should not ordinarily govern the merits.

Finally, proceeding in this civil case while the criminal proceeding is ongoing presents an extreme risk of conflicting judgments and other palpable logistical problems.  In fact, at oral argument, the parties were at a loss to explain how both proceedings could occur simultaneously in light of evidentiary concerns and the availability of witnesses, which is understandable given that no federal court ever appears to have continued civil, equitable jurisdiction in the face of subsequent criminal indictment containing a forfeiture allegation.  Therefore, the potential for conflicting results, and the general impracticability of having two proceedings going forward at the same time with respect to the same property, weighs heavily against retaining jurisdiction in this case.

Thus, the Court concludes that the Altman criminal proceeding presents the Gmach with an "adequate remedy at law" to seek a return of the seized funds.

**D.    Additional Considerations**

Additional equitable considerations may be relevant to whether this Court should exercise equitable jurisdiction.  These include: (1) whether the Government displayed a callous disregard for the constitutional rights of the Gmach; (2) whether the Gmach has an individual interest in and need for the property; and (3) whether the Gmach would be irreparably injured by denying a return of the property at this time.  See, e.g., Ramsden, 2 F.3d at 325.  The parties have not argued

---

[9] On March 1, 2010, Judge Linares entered a second order continuing the proceedings in light of, among other things, ongoing plea negotiations.  See CM/ECF Docket No. 10-cr-00053 at Entry No. 20.

these factors in any meaningful way.  Nevertheless, a cursory review of these factors supports declining jurisdiction in this case.

First, there has been no callous disregard of the Gmach's rights by the Government.  The seizure was made pursuant to a warrant supported by probable cause; this was not an arbitrary seizure.  E.g., Ramsden, 2 F.3d at 325 (finding callous disregard when seizure was made without obtaining a warrant even though the government had an opportunity to secure one).  In the context of this motion, the finding of probable cause is not subject to substantial debate.  See, e.g., United States v. Leon, 468 U.S. 897, 921 (1984).

Second, though the Gmach has an obvious interest in the use of its funds, the Government also has an interest in the funds.  It has claimed these monies were used in illicit conduct, albeit not the Gmach's, and that they are subject to forfeiture.  If the funds were returned, they would or could be used and depleted, reducing the amount available to the Government should it be entitled to forfeiture in this case.  Thus, while the Gmach has a clear interest in the use of the funds, the Government's interest is not *de minimis*.  This factor is neutral.

Third, there has been no showing of irreparable harm.  The Gmach has argued that it will be inconvenienced by the deprivation of its funds and that the seizure is simply not fair.  However, "[i]n defining the contours of irreparable harm, the case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial."  Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1262 (10th Cir. 2004); see also Instant Air Freight Co. v. C.F. Air Freight, 882 F.2d 797, 801 (3d Cir. 1989) (defining irreparable harm as "harm which cannot be redressed by a legal or equitable remedy following a trial").  No such showing has been made in this case.

## IV.   CONCLUSION

For the reasons set forth above, the Court declines equitable jurisdiction over the Gmach's motion.  Accordingly, the motion is **dismissed**.  The file shall be marked **closed**.  An appropriate Order implementing this Opinion will be entered.


s/Mark Falk_____
**MARK FALK**
**United States Magistrate Judge**


Dated:  March 3, 2010